The Honorable Boyd Hickinbotham State Representative P.O. Box 326 Salem, AR 72576-0326
Dear Representative Hickinbotham:
I am writing in response to your request for my opinion on three questions you have submitted on behalf of the mayor of Cherokee Village. I will paraphrase the questions as follows:
 1. Do the provisions of Act 286 of 1967 (§ 2, par. i), permit the Board of Commissioners of Cherokee Village Suburban Improvement District #1 (the "SID") to do whatsoever they deem necessary in directing SID affairs?
2. If not, what action, if any, is required to redress the situation?
 3. It appears that Act 41 of 1941 and all relating amendments are silent regarding providing free services and access to SID amenities for those individuals selected by the Board of Commissioners. Do provisions of Act 286, § 2 permit such action?
In posing these questions, the mayor offered the following commentary:
 It is generally believed that Act 286 was specifically designed for and applies only to Cherokee Village Suburban Improvement District #1. The wording certainly suggests that this is so and that may explain why it has never been [q]uestioned in a specific manner, for the chances of this happening is [sic] remote.
RESPONSE
With respect to your first question, so long as the SID board's actions are in fact undertaken in the course of addressing statutorily authorized and court-approved "SID affairs," I believe board members can indeed "do whatsoever they deem necessary." With respect to your second question, any interested property owner can challenge in court any board action he believes exceeds the scope of the board's authority as set forth in A.C.A. § 14-92-201 et seq. With respect to your third question, nothing in Act 286, § 2 authorizes providing unspecified "selected individuals" free SID services and access to SID amenities. The practice of providing such services and access would be permissible only if it benefited the SID property owners.
Question 1: Do the provisions of Act 286 of 1967 (§ 2, par. i), permitthe Board of Commissioners of Cherokee Village Suburban ImprovementDistrict #1 (the "SID") to do whatsoever they deem necessary in directingSID affairs?
As posed, I believe the answer to this question is "yes," subject to the condition that the commissioners' actions must indeed be undertaken in pursuit of authorized "SID affairs."
Act 41 of 1941, as amended, inter alia, by Act 286 of 1967, and currently codified at A.C.A. § 14-92-201 et seq., authorizes the residents of a defined district to petition the circuit court to create a suburban improvement districts to provide various services authorized by statute and specified in the petition. As I noted in Ark. Op. Att'y Gen. No.2001-023:
 A district organized under these provisions has broad authority to accomplish its purposes. See generally Cherokee Village Homeowners Protective Association v. Cherokee Village Road and Street Improvement District No. 1, 248 Ark. 1055, 455 S.W.2d 93 (1970). As stated by the court in Cherokee Village, "[o]nce an improvement district is lawfully created, it assumes the status of a de jure governmental agency[.]" 248 Ark. at 1058. The governing body for the agency is the board of commissioners. See A.C.A. §§ 14-92-207 (formerly A.S.A. §§ 20-703 and -717) and 14-92-210 (formerly A.S.A. § 20-704.1). And as noted by the court in another case involving a suburban improvement district, "the manner in which [the board of commissioners'] duty is performed is largely a matter within their discretion." Page v. Highway 10, Water Pipe Line Improvement District No. 1, 201 Ark. 512, 516, 145 S.W.2d 344
(1940). Thus, as a matter of state law, I believe it is correct to say that the SID is autonomous. The district must act for the benefit of all the affected property owners. 248 Ark. at 1059 (noting that if any property owner feels aggrieved, he has the right to have the decision of the improvement district judicially reviewed). But the board of commissioners is the body charged under state law with the responsibility of administering the district.
As the court further noted in Page:
 Commissioners of the improvement district can exercise no powers but those which are conferred upon them by the Act by which they are constituted, or such as are necessary to the exercise of their corporate powers, the performance of their corporate duties and the accomplishment of the purposes of their association.
201 Ark. at 518.
Section 2 of Act 286 amended Act 41, § 4. The amendment essentially expanded the range of powers a suburban improvement district might petition to undertake, specifying, for instance, that a district might exercise the power of eminent domain. See Act 286, § 2(c). The mayor has specifically inquired about the scope of Act 286, § 2(i), currently codified at A.C.A. § 14-92-220(a), which provides:
 Any said district, in aid to and furtherance of the purposes aforesaid shall have the authority to hire managers and other employees and to pay their salaries incident to the operation and maintenance of any of the improvements and facilities herein authorized, and shall also have the authority to acquire and purchase equipment and machinery incident to the operation and maintenance of such facilities, and shall be further authorized to do any and all other acts which shall be deemed necessary in order to purchase, construct, accept as a gift, operate and maintain any and all improvements and facilities herein authorized.
The first three words of this passage clearly indicate that it applies to all suburban improvement districts covered by Act 286. Given both this language and the absence in the passage of any reference to Cherokee Village, I must respectfully disagree with the mayor's suggestion that this subsection applies only to the Cherokee Village SID. As for the scope of the powers at issue, I believe subsection 2(i) covers the entire range of statutorily authorized SID activities, including the purchase, acceptance by gift, operation and maintenance of "any and all improvements and facilities herein authorized." (The specific types of authorized "improvements and facilities" are exhaustively catalogued elsewhere in Act 286.) In my opinion, subsection 2(i) is unequivocal in declaring that the commissioners may undertake whatever action they "deem necessary" in pursuit of these authorized activities, subject to the right of any interested individual to seek judicial review to determine whether the action is ultra vires or unlawful in some other respect.Cherokee Village, 248 Ark. at 1059.
Question 2: If not, what action, if any, is required to redress thesituation?
I am uncertain what you mean by "the situation." However, as noted in my response to your previous question, any action by the commission is subject to judicial challenge.
Question 3: It appears that Act 41 of 1941 and all relating amendmentsare silent regarding providing free services and access to SID amenitiesfor those individuals selected by the Board of Commissioners. Doprovisions of Act 286, § 2 permit such action?
I should note initially that this question is ambiguous because it does not identify the "individuals selected by the Board of Commissioners" and does not indicate why these individuals have been provided "free services and access to SID amenities." Whatever the answer to these questions, the crucial factual inquiry in each instance will be whether the provision of "free services and access" benefits the district's property owners.Cherokee Village, 248 Ark. at 1059. If not, I believe a property owner could successfully challenge the board's actions. Nothing in Act 286, § 2 suggests a contrary conclusion. Although I am neither authorized nor equipped to opine on the factual question of whether providing "free services and access" to district amenities in a particular instance has benefited district members, it would appear that this would rarely, if ever, be the case. However, as noted above, only a finder of fact can make this determination.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh